IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MARCIANO GARCIA LAREDO,<br><br>Petitioner,<br><br>v.<br><br>RYAN ARBON, *et al.*,<br><br>Respondents. | **MEMORANDUM DECISION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>Case No. 1:26-cv-72-HCN<br><br>Howard C. Nielson, Jr.<br>United States District Judge |

Petitioner Marciano Garcia Laredo seeks a writ of habeas corpus under 28 U.S.C. § 2241, arguing that his detention pending the resolution of his removal proceedings is unlawful. *See* Dkt. No. 1. He also moves for a temporary restraining order prohibiting the Respondents from transferring him outside the state of Utah, transferring him outside the jurisdiction of this court, or removing him from the United States pending the resolution of his habeas corpus petition. *See* Dkt. No. 2. The court denies the petition and the motion.

**I.**

Mr. Garcia Laredo alleges that he entered the United States without inspection in September 2005 and has resided continuously in the United States since that time. *See* Dkt. No. 1 ¶¶ 2, 31. He further alleges that, during those approximately twenty-one years, he "has never been inspected, paroled, admitted, or otherwise processed by United States Customs and Border Protection" or "by United States Immigration and Customs Enforcement." *Id.* ¶ 3. Nor, he represents, has he had any "serious problems with the law." *Id.* ¶ 38.

On May 13, 2026, Mr. Garcia Laredo was stopped in Weber County and cited for driving without a license. *See id.* ¶¶ 6, 39–41. Local law enforcement then brought Mr. Garcia Laredo to the attention of ICE, which took Mr. Garcia Laredo into custody and either initiated or will soon

initiate removal proceedings. *See id.* ¶¶ 6, 18, 42–44. Since that time, Mr. Garcia Laredo has remained in custody without a bond hearing. *See id.* ¶¶ 7, 43, 45–46. Mr. Garcia Laredo challenges his detention on the asserted grounds that (1) 8 U.S.C. § 1226 requires bond hearings for aliens who enter the United States without inspection and are subsequently detained in connection with removal proceedings, (2) the Board of Immigration Appeals engaged in impermissible rulemaking by interpreting Section 1225 to require the detention of such aliens pending the resolution of their removal proceedings, (3) his detention without a bond hearing violates his due process rights, (4) the Board's retroactive application of its new interpretation of Section 1225 violates his due process rights, and (5) ICE's decision to take him into custody was arbitrary and capricious.

## II.

The court concludes that Mr. Garcia Laredo's arguments lack merit and accordingly denies the petition without requiring a response from the Government. *Cf.* Rules Governing Section 2254 Cases in the United States District Courts 1(b), 4; *Boutwell v. Keating*, 399 F.3d 1203, 1210 n.2 (10th Cir. 2005).

## A.

Mr. Garcia Laredo first contends that 8 U.S.C. § 1226(a) and its implementing regulations require the Government to afford him a bond hearing to determine whether he should be released or detained pending the resolution of his removal proceedings. The court disagrees because it concludes that Mr. Garcia Laredo is detained under 8 U.S.C. § 1225(b)(2)(A), which requires that, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt

entitled to be admitted, the alien *shall* be detained for a [removal] proceeding under section 1229a of this title." (Emphasis added.)

Section 1225(a)(1) provides that "[a]n alien present in the United States who has not been admitted *or* who arrives in the United States . . . shall be deemed for the purposes of this chapter an applicant for admission." (Emphasis added.) And the word "admitted" is defined, in turn, as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A).

Mr. Garcia Laredo concedes that he "entered the United States without inspection"—and thus without authorization—by an immigration officer. Dkt. No. 1 ¶ 2; *see also id.* ¶¶ 31–32. It follows that he "is an 'applicant for admission' and is 'seeking admission' within the meaning of Section 1225(b)(2)(A)." *Cisneros v. Noem*, — F. Supp. 3d —, 2026 WL 396300, at *2 (D. Utah Feb. 12, 2026); *see also Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 502–04 (5th Cir. 2026); *Avila v. Bondi¸* 170 F.4th 1128, 1135–38 (8th Cir. 2026). Given that Mr. Garcia Laredo "offers no evidence or argument that he is 'clearly and beyond a doubt entitled to be admitted,'" Section 1225(b)(2)(A) thus "requires his detention while his removal proceedings are pending." *Cisneros*, — F. Supp. 3d at —, 2026 WL 396300, at *2 (quoting 8 U.S.C. § 1225(b)(2)(A)).

**B.**

Mr. Garcia Laredo next argues that, in *Matter of Yajure Hurtado*, the Board of Immigration Appeals engaged in impermissible rulemaking by interpreting 8 U.S.C. § 1225(b)(2)(A) to require detention of aliens who, like him, entered the United States without inspection. *See* 29 I. & N. Dec. 216, 228 (BIA 2025). Specifically, he argues that, "[t]hrough adjudication, the Board has purported to adopt a rule that the agency expressly considered,

3

expressly proposed, and explicitly rejected during notice-and-comment rulemaking." Dkt. No. 1 ¶ 77. The court disagrees.

To be sure, Mr. Garcia Laredo is correct that, after Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), the Department of Justice declined to adopt a proposed regulatory provision that would have categorically excluded "inadmissible aliens in removal proceedings" from the scope of 8 U.S.C. § 1226. *Compare* 62 Fed. Reg. 444, 483 (Jan. 3, 1997), *with* 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). In the supplementary information accompanying the interim rule, the Department explained that "[t]he effect of this change is that inadmissible aliens, except for arriving aliens, have available to them bond redetermination hearings before an immigration judge, while arriving aliens do not." 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997).

But the court cannot conclude that this history shows that the Department expressly rejected the interpretation of Section 1225(b)(2)(A) later adopted in *Matter of Yajure Hurtado*. In the same supplementary information, the Department stated that "*[d]espite being applicants for admission*, aliens who are present without having been admitted or paroled . . . will be eligible for bond and bond redetermination." *Id.* (emphasis added). As the Fifth Circuit explained, "[t]his language appears to concede that unadmitted aliens fell literally within the scope of § 1225 . . . ." *Buenrostro-Mendez*, 166 F.4th at 506–07. Moreover, these statements appeared only in the supplementary information accompanying the interim rule, and Mr. Garcia Laredo "neither identifies any justification or analysis offered by the agency in support of" them "nor cites any portion of the actual interim rule that incorporates" them. *Cisneros*, — F. Supp. 3d at —, 2026 WL 396300, at *5 n.6. While the court is certainly "willing to consider agency interpretations for whatever persuasive value they may have," "[g]iven the statement[s'] self-acknowledged

4

inconsistency with the language of the statute . . . the court can only conclude that [they] reflect[] an assertion of administrative authority (perhaps akin to prosecutorial discretion) not to enforce the statute as written, as well as a representation regarding how the agency intended to exercise that purported authority." *Id.* at *5 & n.6.

The 1997 final rule's operative text further undermines Mr. Garcia Laredo's argument. That rule provides that

> [a]n alien who was not inspected and admitted or paroled into the United States but who establishes that he or she has been continuously physically present in the United States for the 2-year period immediately prior to the date of determination of inadmissibility shall be detained in accordance with section 235(b)(2) of the Act [(8 U.S.C. § 1225(b)(2))] for a proceeding under section 240 of the Act.

8 C.F.R. 235.3(b)(1)(ii); 62 Fed. Reg. 10312, 10355 (Mar. 6, 1997). As the Fifth Circuit noted, "[t]his regulatory provision from 1997 looks no different from the government's interpretation in 2025." *Buenrostro-Mendez*, 166 F.4th at 507. And unlike the supplementary information on which Mr. Garcia Laredo relies, that provision appears in the rule itself.

For these reasons, the court cannot conclude that the Board of Immigration Appeals engaged in impermissible rulemaking by adopting an interpretation that the Department of Justice had previously considered and expressly rejected. The 1997 rules and their supplementary information instead suggest that the Department recognized that applicants for admission who entered without inspection fell within Section 1225(b)(2)(A), while also adopting a regulatory practice that permitted some of those applicants to seek bond. At most, that practice appears to reflect the Department's asserted discretion not to enforce the statute to its full extent.[1]

---

[1] In all events, the cases on which Mr. Garcia Laredo relies in support of this argument do not appear to support his position. *See Nunez-Pena v. INS*, 956 F.2d 223 (10th Cir. 1992); *First Bancorporation v. Bd. of Governors*, 728 F.2d 434 (10th Cir. 1984); *Patel v. INS*, 638 F.2d 1199 (9th Cir. 1980). Those decisions may prohibit an agency from amending its own regulations by adjudication. But the court cannot conclude that they further prohibit an agency from resolving a

**C.**

Mr. Garcia Laredo also maintains that his continued detention without a bond hearing violates his due process rights. But "[g]iven that [his] detention is mandatory under Section 1225(b)(2)(A), . . . a bond hearing could not remedy [his] deprivation of liberty and would thus serve no purpose." *Cisneros*, — F. Supp. 3d at —, 2026 WL 396300, at *6. Nor does the detention itself violate due process "absent undue delay or some indication that the Government's purpose in detaining [him] is not to facilitate deportation but instead to lock up and punish aliens who have not committed a crime," *id.* (cleaned up)—a showing that Mr. Garcia Laredo does not, and almost certainly could not, make.

**D.**

Mr. Garcia Laredo next contends that the Board's recent interpretation of Section 1225(b)(2)(A), as applied to him, has an impermissible retroactive effect and violates due process. The court disagrees.

"A statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment or upsets expectations based in prior law. Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 269–70 (1994) (citation omitted). In other words, a statute will "be deemed retrospective" only if it "takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past." *Id.* at 269 (cleaned up).

---

statutory question through adjudication merely because doing so exposes a prior regulatory practice as inconsistent with the statute.

The court finds the Supreme Court's decision in *Fernandez-Vargas v. Gonzales* instructive. *See* 548 U.S. 30 (2006). There, the petitioner illegally reentered the United States before IIRIRA's enactment, when the provision governing reinstatement of prior deportation orders did not apply to all illegal reentrants and some, including the petitioner, remained eligible for discretionary relief. *See id.* at 34–36. IIRIRA, however, expanded reinstatement to cover "all illegal reentrants," and also "explicitly insulate[d] the removal orders from review" and "generally foreclose[d] discretionary relief from the terms of the reinstated order." *Id.* at 35. The petitioner argued that applying these provisions to him would be impermissibly retroactive because his illegal reentry predated IIRIRA. *See id.* at 36.

The Supreme Court disagreed. It explained that, "[w]hile the law looks back to a past act in its application to 'an alien who has reentered illegally,' the provision does not penalize an alien for the reentry"; instead, "*it establishes a process to remove him* under the prior order at any time after the reentry." *Id.* at 44 (emphasis added) (cleaned up). The Court further reasoned that "the conduct of remaining in the country after entry" was the relevant "predicate action," and that it was the petitioner's "choice to continue his illegal presence, after illegal reentry and after the effective date of the new law, that subject[ed] him to the new and less generous legal regime"—"not a past act that he [was] helpless to undo up to the moment the Government f[ound] him out." *Id.* The Court accordingly held that IIRIRA's expanded reinstatement provision had "no retroactive effect when applied to aliens like" the petitioner. *Id.* at 47.

So too here. While the Board's reinterpretation of Section 1225(b)(2)(A) may look to a past fact—Mr. Garcia Laredo's entry without inspection—it does not attach new legal consequences to that completed act. It does not make his entry newly unlawful, impose an additional penalty for that entry, or disturb any vested right acquired under prior law. Rather, the

Board's interpretation determines only the *present* legal consequences of Mr. Garcia Laredo's *present* status as an unadmitted applicant for admission during ongoing removal proceedings. In other words, the Board's interpretation "does not penalize" his presence but merely "establishes a process to remove him." And it is Mr. Garcia Laredo's "choice to continue his illegal presence" after the Board's current interpretation of Section 1225(b)(2)(A), not his illegal entry years ago, "that subjects him to the new and less generous regime."

Indeed, Mr. Garcia Laredo's retroactivity argument is weaker here than in *Fernandez-Vargas*. There, the Supreme Court permitted a newly enacted statutory provision to apply to a noncitizen who had reentered before that provision existed. Here, however, Section 1225(b)(2)(A) was already in effect when Mr. Garcia Laredo entered the United States. The Board merely interpreted that existing statute. And as already explained, the court believes the Board's current interpretation of the statute is correct.

For all these reasons, the court concludes that the Board's recent interpretation of Section 1225(b)(2)(A), as applied to Mr. Garcia Laredo, is not impermissibly retroactive and does not violate due process.

### E.

Finally, Mr. Garcia Laredo argues that ICE has acted arbitrarily and capriciously by detaining him without a bond hearing. *See* 5 U.S.C. § 706(2)(A). "Agencies are," to be sure, "under an obligation to follow their own regulations, procedures, and precedents, or provide a rational explanation for their departures." *Big Horn Coal Co. v. Temple*, 793 F.2d 1165, 1169 (10th Cir. 1986) (cleaned up). But Mr. Garcia Laredo has identified no way in which his detention departs from any immigration regulation or procedure. To the contrary, it appears to be *required* by both statute, *see* 8 U.S.C. § 1225(b)(2)(A), and current administrative practice, *see*

*Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 228 (BIA 2025). It follows that ICE's decision to detain him without a bond hearing is based on "a rational connection [to] the facts" of his case—namely, his status as an alien who entered the United States without admission—and thus is not arbitrary or capricious. *Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (cleaned up); *cf. Mobil Oil Expl. & Producing Se., Inc. v. United Distrib. Cos.*, 498 U.S. 211, 222–25, 225 n.5 (1991). Nor does ICE's departure from the practice of "previous presidential administrations" in applying Section 1225(b)(2)(A) to aliens like Mr. Garcia Laredo render its decision to detain him arbitrary or capricious: "[a]gencies are of course free to change their minds as long as the proper procedures are followed." *Cisneros*, —— F. Supp. 3d at ——, 2026 WL 396300, at *4 (cleaned up).

* * *

For the foregoing reasons, Docket Number 1, Petition for Writ of Habeas Corpus, is **DENIED.** Docket Number 2, Emergency Motion for Temporary Restraining Order in Support of Habeas Corpus Petition, is **DENIED AS MOOT**.[2]

---

[2] Even if this motion were not moot, the court would deny it on the merits. For the same reasons the court denies his petition, Mr. Garcia Laredo has not demonstrated to the court's satisfaction that he is likely to succeed on the merits of any of his claims. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Nken v. Holder*, 556 U.S. 418, 434 (2009); *Schiermeyer ex rel. Blockchain Game Partners, Inc. v. Thurston*, 697 F. Supp. 3d 1265, 1269 (D. Utah 2023).

**IT IS SO ORDERED.**

Dated this 21st day of May, 2026.

BY THE COURT:

_____

Howard C. Nielson, Jr.
United States District Judge